UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on November 16, 2009

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. |
| | : | |
| v. | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 1203 (a) |
| DOREEN ALEXANDER, | : | (Conspiracy to Commit Hostage |
| | : | Taking Resulting in Death) |
| | : | |
| Defendant. | : | 18 U.S.C. § 1203 (a) |
| | : | (Hostage Taking Resulting in Death) |
| | : | |
| | : | 18 U.S.C. § 2 |
| | : | (Aiding and Abetting and Causing an |
| | : | Act to be Done) |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE

At all times material to this Indictment, except as otherwise indicated:

#### A. Background

1. Balram Maharaj was a national and citizen of the United States. Balram Maharaj was formerly known as Alladin Barlow John.

2. The defendant, **DOREEN ALEXANDER**, is a citizen of the country of Trinidad and Tobago (hereinafter "Trinidad").

3. Dinesh Maharaj, a minor child who is a national and citizen of the United States, is the son of Balram Maharaj and the defendant **DOREEN ALEXANDER**.

4. From at least January 2005 through April 2005, Balram Maharaj was a resident of the United States and **DOREEN ALEXANDER** and Dinesh Maharaj were residents of Trinidad.

5. All events alleged in this Indictment took place within the country of Trinidad, in the extraterritorial jurisdiction of the United States, and, pursuant to Title 18, United States Code, Section 3238, within the venue of the United States District Court for the District of Columbia.

### B. The Conspiracy

6. Beginning at dates and times unknown to the Grand Jury, but including the period from in or about January 2005 and continuing through to on or about April 15, 2005, in Trinidad, the defendant, **DOREEN ALEXANDER**, did knowingly conspire and agree with other conspirators, both known and unknown to the Grand Jury, to seize and detain and threaten to kill, to injure, and to continue to detain Balram Maharaj in order to compel a third person to pay ransom for the release of Balram Maharaj, as an explicit and implicit condition for the release of Balram Maharaj.

7. The death of Balram Maharaj resulted from this conspiracy to commit hostage taking.

### C. Object of the Conspiracy

8. The object of the conspiracy was to obtain money belonging to Balram Maharaj.

### D. Manner and Means To Accomplish the Object of the Conspiracy

9. Members of the conspiracy agreed to and did kidnap Balram Maharaj and held him as a hostage, demanding payment of ransom from members of his family.

E. Overt Acts

10. In furtherance of the conspiracy and to accomplish the object thereof, the defendant, **DOREEN ALEXANDER**, and other conspirators, both known and unknown to the Grand Jury, committed the following overt acts, among others:

(1) In or about January 2005, co-conspirator # 1 (CC-1) and **DOREEN ALEXANDER** decided and agreed to stage a kidnapping of the son of Balram Maharaj and **DOREEN ALEXANDER**, Dinesh Maharaj, in order to compel Balram Maharaj to pay a ransom for his release;

(2) In or about January 2005, CC-1 approached co-conspirator #2 (CC-2) about CC-1 and **DOREEN ALEXANDER's** plan to stage a kidnapping of the son of Balram Maharaj and **DOREEN ALEXANDER**, Dinesh Maharaj, in order to compel Balram Maharaj to pay a ransom for his release;

(3) In or about early 2005, **DOREEN ALEXANDER** informed her mother that she would be receiving $3 million Trinidad dollars (approximately, U.S. $500,000) from Balram Maharaj;

(4) In or about early February 2005, **DOREEN ALEXANDEER** and CC-1 met with CC-2 to discuss their plan to stage the kidnapping of Dinesh Maharaj;

(5) In or about early February 2005, CC-2 proposed to kidnap Balram Maharaj instead of staging the kidnapping of Dinesh Maharaj;

(6) **DOREEN ALEXANDER** and CC-1 agreed to CC-2's proposal;

(7) In or about late February 2005, CC-2 met with co-conspirator # 3 (CC-3), who agreed to have CC-3's kidnapping crew handle the kidnapping of Balram Maharaj;

(8) CC-2 and CC-3 agreed that such kidnapping would occur when Balram Maharaj

next visited Trinidad;

(9) On or about March 27, 2005, **DOREEN ALEXANDER** and CC-1 spoke by phone prior to Balram Majaraj's arrival in Trinidad on or about March 29, 2005;

(10) On or about March 31, 2005, **DOREEN ALEXANDER** called Balram Maharaj's mother's house in Trinidad;

(11) Minutes later, **DOREEN ALEXANDER** and CC-1 spoke by phone;

(12) In or about late March 2005, CC-1 informed CC-2 that Balram Maharaj was in Trinidad;

(13) In or about early April 2005, in a bar near Balram Maharaj's mother's house, CC-1 pointed out Balram Maharaj to CC-2, CC-3, and other assembled conspirators, whose identities are known to the Grand Jury;

(14) On April 6, 2005, CC-1, CC-2, CC-3, and other assembled conspirators, whose identities are known to the Grand Jury, met at the Mellow Moods Bar to make final preparations for the kidnapping of Balram Maharaj;

(15) On April 6, 2005, conspirators, whose identities are known to the Grand Jury, armed with pistols, entered the Samaan Tree Bar and dragged Balram Maharaj from the bar at gunpoint;

(16) On April 6, 2005, conspirators, whose identities are known to the Grand Jury, marched Balram Maharaj to a remote hideout location in the mountains where they detained him;

(17) On April 7, 2005, at approximately 7:00 a.m., **DOREEN ALEXANDER** called CC-1;

(18) Minutes later, **DOREEN ALEXANDER** called Balram Maharaj's mother's house;

(19)  Beginning on or about April 6, 2005, and continuing until on or about April 13, 2005, conspirators known to the Grand Jury learned that Balram Maharaj had various serious health conditions and needed medications;

(20)  Beginning on or about April 6, 2005, and continuing until on or about April 13, 2005, conspirators known to the Grand Jury refused to provide Balram Maharaj with the medications he needed to manage his very serious health conditions, and simultaneously prevented him from obtaining for himself the medications he needed to sustain his life;

(21)  On or about April 9, 2005, CC-3 accompanied co-conspirator # 4 (CC-4), to various pay telephone locations in Trinidad from which telephone calls were made to the family of Balram Maharaj, demanding a ransom of $3 million Trinidad dollars (approximately, U.S.$500,000) in exchange for the release of Balram Maharaj;

(22)  On or about April 13, 2005, Balram Maharaj died in the custody of conspirators known to the Grand Jury;

(23)  On or about April 13, 2005, following the death of Balram Maharaj, CC-3, co-conspirator #5 (CC-5), and other conspirators known to the Grand Jury had a meeting and decided to chop up and dismember the body of Balram Maharaj and bury his body parts;

(24)  On or about April 13, 2005, CC-5 and other conspirators known to the Grand Jury hiked to the location where Balram Maharaj's dead body was hidden;

(25)  On or about April 13, 2005, CC-5 and a conspirator known to the Grand Jury used a large knife, described as a cutlass or machete, to dismember Balram Maharaj's body;

(26)  On or about April 13, 2005, CC-5 and other conspirators known to the Grand Jury, assisted in placing the dismembered remains of Balram Maharaj into a blue plastic barrel and a large white Styrofoam cooler;

(27)    A few days later, CC-1 informed **DOREEN ALEXANDER** that Balram Maharaj was dead and to keep quiet about the kidnapping;

(28)    **DOREEN ALEXANDER** responded to the news by indicating that she would be receiving money from Balram Maharaj's estate, which she would use to pay the kidnappers.

(**Conspiracy to Commit Hostage Taking Resulting in Death**, in violation of Title 18, United States Code, Section 1203.)

## COUNT TWO

1.    Paragraphs 1, 2 and 5 of Count One of this Indictment are hereby re-alleged as if fully set forth herein and are incorporated by reference.

2.    From on or about April 6, 2005, and continuing thereafter through on or about April 15, 2005, the defendant, **DOREEN ALEXANDER**, and others, known and unknown to the Grand Jury, aided and abetted by one another, did knowingly seize and detain and threaten to kill, to injure, and to continue to detain Balram Maharaj in order to compel a third person to pay ransom for the release of the Balram Maharaj, as an explicit and implicit condition for the release of Balram Maharaj.

3. The death of Balram Maharaj resulted from this hostage taking.

**(Hostage Taking Resulting in Death and Aiding and Abetting and Causing an Act To be Done,** in violation of Title 18, United States Code, Sections 1203 and 2.)

A TRUE BILL:

FOREPERSON

LANNY A. BREUER
Assistant Attorney General
Criminal Division

Teresa McHenry
Chief, Human Rights & Special Prosecutions Section
Criminal Division

Teresa Wallbaum
Matthew Singer
Trial Attorneys
Human Rights & Special Prosecutions Section
Criminal Division